UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SQUARE, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>FERNANDO MORALES and JOHN DOE,<br><br>    Defendants. | Case No: C 13-01431 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Docket 16 |

Plaintiff Square, Inc. ("Square") brings this declaratory relief action against Defendant Fernando Morales ("Morales") seeking, among other things, a declaration of non-infringement and invalidity with respect to claim 6 of United States Patent No. 5,872,589 ("the '589 patent"). Compl., Dkt. 1. The parties are presently before the Court on Morales' motion to dismiss for lack of personal jurisdiction and motion to dismiss Square's third claim for relief for lack of subject matter jurisdiction. Dkt. 16. Square opposes the motions. Dkt. 42. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Morales' motion to dismiss for lack of personal jurisdiction, and DENIES as moot Morales' motion to dismiss Square's third claim for relief for lack of subject matter jurisdiction, for the reasons stated below. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.    BACKGROUND**

   **A.    Factual Background**

Square is a California corporation with its principal place of business in San Francisco, California. Compl. ¶ 2. Square develops and manufactures software and hardware products and services that allow users to accept credit and debit card payments

through their mobile devices.  Id. ¶ 3.  Among other offerings, Square develops and disseminates the Square Reader.  Pl.'s Opp. at 1.  By plugging a Square Reader into a mobile phone or tablet, individuals and businesses are able to accept credit and debit card payments.  Id. at 1-2.

Morales is an individual who resides in Rancho Viejo, Texas.  Compl. ¶ 5.  Morales has developed a software application or "app" for use on Android mobile devices entitled "sos2facebook" or "sos2fb," which he claims is protected by the '589 patent.  Id. ¶ 14.  The '589 patent, entitled "Interactive TV System for Mass Media Distribution," was issued to Morales on February 16, 1999 with Interactive Return Service, Inc. ("IRS") named as the assignee of the patent.[1]  Id. ¶ 20.

On February 8, 2013, Morales traveled to Square's office in San Francisco and requested to speak with Square's General Counsel regarding Square's infringement of the '589 patent.  See Compl. ¶¶ 10, 24; Morales Decl. ¶ 5, Dkt. 43-1.  A security officer, however, denied Morales access to Square's office and its employees.  Compl. ¶ 10.  Before leaving Square's office, Morales provided the security officer with a photocopied sheet entitled "Square and Patent #5,872,589 claim #6," which displayed a device resembling a Square Reader and language reciting claim 6 of the '589 patent.  Id.  Morales also gave the security officer a business card, which contains a reference to "S.O.S.2facebook" and states that "App protected by Patent # 5,872,589."  Id.

Later that same day, Morales sent an email to Square asserting that it was infringing "Claim #6" of the '589 patent.  Compl. ¶ 11.  In this email, Morales requested to meet with a representative from Square's legal department before he returned to Texas the next

---

[1] Square alleges that IRS was "terminated" by the State Corporation Commission for the Commonwealth of Virginia on or about June 30, 2008.  Compl. ¶ 22.  Square asserts that while Morales claims that the '589 patent was assigned back to him before the termination of IRS, Morales has not produced any documentation substantiating his assertion.  Id. ¶ 23.  According to Square, the United States Patent and Trademark Office's website does not support Morales' assertion that the '589 patent was assigned back to him.  Id.

morning to "discuss a win-win solution."  Id.  However, no meeting took place between Morales and any employee of Square on February 8, 2013.

After his unsuccessful attempt to meet with Square's legal counsel, Morales sent a series of emails to Square in March 2013 reiterating his allegation that Square infringes claim 6 of the '589 patent and attempting to "coerce" Square into accepting a business deal in exchange for settling his infringement claims.  See Compl. ¶¶ 12, 26-29; Pl.'s Opp. at 3-4.  According to Square, Morales has repeatedly accused Square of infringing claim 6 of the '589 patent, insisted on a business deal that would integrate and co-market his technology with Square's, requested exorbitant sums of cash and stock awards, imposed a deadline of March 31, 2013 for compliance with his demands, threatened an "ex parte TRO" to shut down use of Square's products, and has rebuffed overtures to discuss his contentions by phone.  See id. ¶¶ 25-30; see also Pl.'s Opp. at 1, 3-4.

Square alleges that Morales has subjected himself to personal jurisdiction in the Northern District of California by traveling to San Francisco to threaten it with patent infringement, relying on local businesses to establish a business platform for exploiting his claimed technology,[2] attempting to license and/or sell his sos2facebook software application to Square in this district,[3] and by attempting to manipulate Square's software by updating his application to trigger the launch of Square's software when a user plugs in the Square Reader.  See id. ¶¶ 13, 15-17; Pl.'s Opp. at 3.

///

///

---

[2] Specifically, Square alleges that Morales has used the "Google Play" website to distribute his sos2facebook software application and has used Facebook to promote the software application, and that both company's headquarters are located in the Northern District of California.  Compl. ¶¶ 15-16.

[3] On March 25, 2013, Morales sent an email to Square stating that in addition to paying money for the rights to the '589 patent, Square could pay extra money to acquire the rights to his sos2facebook software application.  Compl. ¶ 17. The email specifically states that: "For another million dollars, you can get the sos2fb software and for 300,000 dollars (in cash & stock option) a year you can get the professional that wrote it."  Id.  According to Square, this proposal is the same "win-win solution" that Morales traveled to San Francisco to discuss with Square in February 2013.  Id.

### B. Procedural History

On March 1, 2013, Square commenced the instant action against Morales alleging claims for: (1) declaratory judgment of non-infringement of claim 6 of the '589 patent; (2) declaratory judgment of invalidity of claim 6 of the '589 patent; and (3) declaratory judgment of patent ownership. See Compl. ¶¶ 31-42. According to Square, "this lawsuit is a direct result of Mr. Morales' claim that the Square Reader infringes [the '589 patent], his conduct in the lobby of Square's San Francisco headquarters, and his attempts to market his software through Square." Pl.'s Opp. at 1. By this action, Square seeks a declaration that it has not infringed and is not infringing claim 6 of the '589 patent, a declaration that claim 6 of the '589 patent is invalid, a declaration of the identity of the current owner of the '589 patent or that the '589 patent is no longer owned by any person or entity, and an award of attorneys' fees and costs. See Compl. at 8. The parties are now before the Court on Morales' motion to dismiss for lack of personal jurisdiction and motion to dismiss Square's third claim for relief for lack of subject matter jurisdiction. Dkt. 16. Square opposes the motions. Dkt. 42.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

District courts have the authority to dismiss an action for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). Federal Circuit law governs a district court's inquiry into whether it may properly exercise personal jurisdiction over an out-of-state defendant in a patent case. See Nuance Commc'ns., Inc. v. Abbyy Software House, 626 F.3d 1222, 1230 (Fed. Cir. 2010); see also Hildebrand v. Steck Manufacturing Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (Federal Circuit law governs personal jurisdiction inquiries in declaratory judgment actions where the defendant is patentee).  "To survive a motion to dismiss in the absence of jurisdictional discovery, [a plaintiff] need only make a prima facie showing of jurisdiction." Nuance Commc'ns., 626 F.3d at 1231.  "Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor."

Id.  In addition, where the factual allegations are not directly controverted, they are accepted as true for purposes of determining jurisdiction.  Id.

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process."  Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001).  "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."  Id. at 1360.  The exercise of jurisdiction over non-resident defendants violates due process unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

"Depending on their nature and number, a defendant's contacts with a forum can provide a court with general jurisdiction or specific jurisdiction."  Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009).  General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even if the cause of action has no relation to those contacts.  Id.; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over the defendant if the cause of action "arises out of" or "relates to" the defendant's in-state activity.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985).  In order to satisfy due process requirements for establishing specific jurisdiction over a defendant, the plaintiff must show that: (1) the defendant purposely directed its activities at residents of the forum; (2) the plaintiff's claim arises from or relates to those activities; and (3) the assertion of personal jurisdiction under the circumstances is reasonable and fair.  Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785,

1   789 (Fed. Cir. 2011).  Only if the plaintiff meets its burden of proving the first two

2   elements does the burden then shift to defendant to prove the third element.  See

3   Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361-1362 (Fed. Cir.

4   2006).

### B.     Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 563 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 563 U.S. at 678.  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  Id. at 679.  Those facts must be sufficient to push the

- 6 -

1 claims "across the line from conceivable to plausible." Id. at 683.  Ultimately, the
2 allegations must "give the defendant fair notice of what the . . . claim is and the grounds
3 upon which it rests."  Twombly, 550 U.S. at 555 (internal quotation marks and citation
4 omitted).
5    Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless
6 the district court determines that the pleading could not possibly be cured by the allegation
7 of other facts."  Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).
8 Leave to amend is not required where permitting further amendment to the pleadings would
9 be futile.  See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-1050 (9th
10 Cir. 2006).

**III.    DISCUSSION**

   **A.    Motion to Dismiss for Lack of Personal Jurisdiction**

Square does not contend that the Court has general jurisdiction over Morales. Instead, Square argues that specific personal jurisdiction exists over Morales by virtue of his contacts with the forum related to the instant action.  Pl.'s Opp. at 6.  Specifically, Square argues that the Court has specific jurisdiction over Morales because he purposely directed his activities at the forum by: (1) enrolling as a Square merchant, including procuring a Square Reader and Square Register software in an attempt to illustrate Square's alleged infringement; (2) seeking to integrate his technology with Square's; and (3) visiting Square's office in San Francisco to both threaten infringement and attempt to negotiate a deal integrating his technology with Square's products and services.  Id. at 6-7.  As set forth below, the Court finds that Square has failed to carry its burden of demonstrating a prima facie case of specific personal jurisdiction.

In an action for declaratory judgment of patent non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods such as the threat of an infringement suit.  Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1332 (Fed. Cir. 2008).  "Thus, the nature of the claim in a

1  declaratory judgment action is 'to clear the air of infringement charges.' " Id.  Such a claim
2  arises out of or relates to the activities of the defendant patentee in enforcing the patent or
3  patents in suit.  Id.  The relevant inquiry for specific personal jurisdiction purposes then
4  becomes to what extent the defendant patentee purposefully directed such enforcement
5  activities at residents of the forum, and the extent to which the declaratory judgment claim
6  arises out of or relates to those activities.  Id.  As such, only those activities of the patentee
7  that relate to the enforcement or defense of the patent can give rise to specific personal
8  jurisdiction for such an action.  Id. at 1336.  Courts must therefore "examine the
9  jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail
10 itself of the forum and to engage in activity that relates to the validity and enforceability of
11 the patent.' " Id.

12      Under this standard, the act of threatening a party with an infringement lawsuit in an
13 "infringement letter," standing alone, is insufficient to establish personal jurisdiction.
14 Avocent, 552 F.3d at 1333; Radio Sys., 638 F.3d at 789.  This is because, "[a]s a matter of
15 patent law policy, . . . 'principles of fair play and substantial justice afford a patentee
16 sufficient latitude to inform others of its patent rights without subjecting itself to
17 jurisdiction in a foreign forum." Radio Sys., 638 F.3d at 789.  "For the exercise of personal
18 jurisdiction to comport with fair play and substantial justice, there must be other activities
19 directed at the forum and related to the cause of action besides the letters threatening an
20 infringement suit." Avocent, 552 F.3d at 1333.  The "other activities" identified in Avocent
21 include: "initiating judicial or extra-judicial patent enforcement within the forum, or
22 entering into an exclusive license agreement or other undertaking which imposes
23 enforcement obligations with a party residing or regularly doing business in the forum." Id.
24 at 1334.  The Avocent court noted, however, that:

25> While exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of 'other
26> activities' that support specific personal jurisdiction in a declaratory judgment action, the defendant patentee's own commercialization activity does not.
27> What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because 'the federal
28> patent laws do not create any affirmative right to make, use, or sell anything.' 'The franchise which the patent grants, consists altogether in the right to

> exclude every one from making, using, or vending the thing patented, without the permission of the patentee.  This is all that he obtains by the patent.'

Id. at 1335.

Here, the only activities directly relating to Morales' enforcement of the '589 patent in California are: (1) a series of emails sent by Morales to Square in February and March 2013 accusing Square of infringing the '589 patent and attempting to enter into a business deal with Square to settle his claims of infringement, including offering to license and/or sell his sos2facebook software application to Square; and (2) Morales' attempt to meet in person with Square's legal counsel in San Francisco in February 2013.[4]  The Court finds that these activities are insufficient to satisfy the requirements of due process to subject Morales to specific personal jurisdiction in this forum.  All of these contacts were for the purpose of informing Square of its infringing activity and/or negotiating a business agreement with Square related to the '589 patent.  Grounding personal jurisdiction on such contacts does not comport with "fair play and substantial justice."  See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359-1361 (Fed. Cir. 1998) (infringement letters and offers to license the patent-in-suit do not create personal jurisdiction; noting that "[s]tandards of fairness demand that [defendant] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights"); Hildebrand v. Steck Mfg. Company, Inc., 279 F.3d 1351, 1356 (Fed. Cir. 2002) (no personal jurisdiction where all documented contacts were for the purpose of warning against infringement or negotiating license agreements); Radio Sys., 638 F.3d at 789-790 (cease-and-desist correspondence and

---

[4] The Court notes that Square does not argue, as alleged in its complaint, that Morales has subjected himself to personal jurisdiction in this forum based on his use of the "Google Play" website and Facebook to distribute and/or promote his sos2facebook software application.  But, even if Square did, this argument would lack merit.  Morales' use of Internet websites to distribute and/or market his software application is not an enforcement or defense effort related to the '589 patent.  Autogenomics, Inc. v. Oxford Gene Technology Ltd., 566 F.3d 1012, 1020 (Fed. Cir. 2009) ("only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee"); see also Avocent, 552 F.3d at 1335-1336.

attempts to sell a product or license a patent do not give rise to personal jurisdiction); Autonomy, Inc. v. Adiscov, LLC, 2011 WL 2175551, at *3 (N.D. Cal. 2011) (Armstrong, J.) (no personal jurisdiction where the defendant attended a meeting with the plaintiff's counsel in the forum to discuss a potential settlement of the defendant's infringement claims and a subsequent lawsuit filed by defendant in another forum).

Thus, the remaining question is whether Morales has engaged in "other activities" directed at the forum and related to Square's claims of patent non-infringement and invalidity to support the assertion of specific personal jurisdiction over him. In this regard, Square argues that Morales' acts of obtaining Square's technology (i.e., a Square Reader and Square Register software) by signing up for an account with Square, agreeing to Square's Merchant User Agreement, and attempting to integrate his technology with the Square Reader are "other activities" subjecting Morales to specific personal jurisdiction in this forum.[5]  Pl.'s Opp. at 7-8.  The Court disagrees.

Square has failed to carry its burden to demonstrate that such acts constitute "other activities" to confer specific personal jurisdiction over Morales.  Indeed, the fact that Morales acquired, used, and sought to integrate Square's technology with his sos2facebook software application is not germane to the Court's determination of specific jurisdiction. See Autogenomics, 566 F.3d at 1020 ("only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee"); see also Avocent, 552 F.3d at 1335-1336.  Further, while Square contends that Morales is subject to personal jurisdiction in this forum because he "did business with Square . . . and availed himself of the protections of Square's Merchant User Agreement" by setting up a merchant account and acquiring Square's software and a Square Reader in an attempt to illustrate Square's "supposed infringement" of the '589 patent, Pl.'s Opp. at 6-

---

[5] According to Square, "Morales signed up with Square to receive Square's software and card reader device in order to pursue his business objectives, including integration of his own technology with Square's."  Pl.'s Opp. at 7.

7, Square has not proffered any decisional authority or provided legal analysis supporting the proposition that such conduct constitutes an enforcement or defense effort related to the '589 patent that gives rise to specific personal jurisdiction. Absent a showing that Morales engaged in "other activities" directed at the forum and related to the Square's claims of patent non-infringement and invalidity, asserting specific personal jurisdiction over Morales does not comport with due process.

In support of its contention that this Court has specific personal jurisdiction over Morales, Square relies on several cases in which "other activity" was found to be sufficient to subject a patentee to personal jurisdiction in the forum. See Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344 (Fed. Cir. 2003); Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008); Sandisk Corp. v. Round Rock Research LLC, Case No. C 11-5243-RS (N.D. Cal. Feb. 16, 2012). Square's reliance on these cases is misplaced as they are all readily distinguishable from the facts of the present case. The cases relied upon by Square all involved contacts with the forum that went beyond simply warning against infringement and attempting to sell a product or license a patent.

In Electronics for Imaging, the court identified three acts that were sufficient to support the exercise of personal jurisdiction: (1) the patentee hired a California patent attorney to prosecute the patent-in-suit who contacted the accused infringer on multiple occasions "to report on the progress of the [patentee's] pending application"; (2) the patentee called the accused infringer on several occasions to discuss the technology covered by the patent application; and (3) the patentee sent two representatives to the accused infringer's facility in the forum for the purpose of demonstrating the technology underlying what later issued as the '746 patent. Electronics for Imaging, 340 F.3d at 1351. In Campbell Pet, the court found that the patentee's "extra-judicial patent enforcement" acts of traveling to the forum state and attempting to have the accused infringer's products removed from a trade convention and telling the accused infringer's customers that the products were infringing were sufficient to "trigger personal jurisdiction in the forum state" because the acts went beyond simply informing the accused infringer of the infringement

allegations. See Campbell Pet, 542 F.3d at 886-887.  Finally, in an unpublished order, the district court in Sandisk found that the exercise of specific jurisdiction over an out-of-state patentee was appropriate where the patentee hired a California-based company to "perform the necessary analyses and to carry out . . . negotiations" with the accused infringer regarding licensing agreements.  See id. at 5-6 (noting that the "critical fact" for the assertion of personal jurisdiction over the out-of-state patentee was that the patentee hired representatives based in California for the specific purpose of communicating in California with the accused infringer).

**B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

In light of the Court's determination that Square has failed to carry its burden of demonstrating a prima facie case of specific personal jurisdiction over Morales, the Court DENIES as moot Morales' motion to dismiss Square's third claim for relief for lack of subject matter jurisdiction.

**IV.  CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Morales' motion to dismiss for lack of personal jurisdiction is GRANTED.
2. Morales' motion to dismiss Square's third claim for relief for lack of subject matter jurisdiction is DENIED as moot.
3. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: 11/27/2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge